```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                    IN AND FOR THE DISTRICT OF DELAWARE

 3                              - - -

 4    AMAZON.COM, INC.,               :      CIVIL ACTION
                                      :
 5              Plaintiff,            :
                                      :
 6              v.                    :
                                      :
 7    CITI SERVICES, INC., CITI       :
      SERVICES LIMITED, AIKATERINI    :
 8    THEOCHARI and GREG LLOYD SMITH, :
                                      :
 9              Defendants.           :      NO. 99-543 (GMS)

10                              - - -

11                      Wilmington, Delaware
                        Friday, November 5, 1999
12                      3:05 p.m. Telephone Conference

13                              - - -

14    BEFORE:     HONORABLE GREGORY M. SLEET, U.S.D.C.J.

15                              - - -

16    APPEARANCES:

17
                  MORRIS, JAMES, HITCHENS & WILLIAMS
18                BY:  LEWIS H. LAZARUS, ESQ.

19                -and-

20                MORGAN, LEWIS & BOCKIUS
                  BY:  WILLIAM M. BOSCH, ESQ., and
21                     MITCHELL J. MATORIN, ESQ.
                       (Washington, District of Columbia)
22
                               Counsel for Amazon.Com, Inc.
23

24
                               Brian P. Gaffigan
25                             Official Court Reporter
```

```
1    APPEARANCES:  (Continued)

2

3              SMITH, BOSCH & FURLOW, LLP
              BY:  ROBERT J. BOSCH, ESQ.
4
              -and-
5
              COBRIN & GITTES
6              BY:  PETER T. COBRIN, ESQ. and
                   OREN J. WARSHAVSKY, ESQ.
7                   (New York, New York)

8
              Counsel for CITI Services, Inc.,
9                   CITI Services Limited, Aikaterini
                   Theochari and Greg Lloyd Smith
10

11

12

13

14

15                        - oOo -

16              P R O C E E D I N G S

17         (REPORTER'S NOTE:  The following telephone

18   conference was held in chambers, beginning at 3:05 p.m.)

19         THE COURT:  Good afternoon, counsel.  Why don't

20   we start out with counsel identifying yourself.  For the

21   plaintiff, please.

22         MR. LAZARUS:  Your Honor, this is Lewis Lazarus

23   at Morris James on behalf of Amazon.com.  And with me are

24   Bill Bosch and Mitch Matorin of the law firm of Morgan Lewis

25   & Bockius in Washington.
```

 1              Gentlemen, do you want to introduce yourselves

 2   to the Court?

 3              MR. BOSCH:  Good afternoon, Judge.  This is Bill

 4   Bosch.

 5              THE COURT:  Good afternoon.

 6              MR. MATORIN:  And this is Mitch Matorin.

 7              THE COURT:  Good afternoon, gentlemen.

 8              For the defendant.

 9              MR. KATZENSTEIN:  Good afternoon, Your Honor.

10   This is Robert Katzenstein.  Also on the telephone are Peter

11   Cobrin and Oren Warshavsky from the firm of Cobrin & Gittes

12   in New York.

13              MR. COBRIN:  This is Peter Cobrin with Oren

14   Warshavsky.  Good afternoon.

15              THE COURT:  Good afternoon.  Just do me a favor.

16   For the benefit of our court reporter, identify yourselves.

17              We're here for an initial 16(2)(a); and there is

18   an issue that counsel want to address to the Court.  And as

19   I understand, it has to do with some discovery.

20              MR. LAZARUS:  Yes, Your Honor.  May it please

21   the Court, Bill Bosch will address that on behalf of the

22   plaintiff.

23              THE COURT:  Fine.

24              MR. COBRIN:  Your Honor, this is Peter Cobrin.

25   Since we are the ones that made the motion to dismiss for

1    lack of personal and subject matter jurisdiction and case in

2    controversy, we would like to address the motion.

3                THE COURT:  You may.

4                MR. BOSCH:  I'm going to pass it to my

5    colleague, Oren Warshavsky.

6                THE COURT:  Okay.

7                MR. WARSHAVSKY:  Your Honor, I guess our

8    position is fairly simple, which is that we believe that

9    there is no personal jurisdiction.  We submitted the

10   affidavits that -- or the declarations, rather, that there

11   is no jurisdiction.  We don't think the Greek citizens

12   should be hauled into court in Delaware or hauled into

13   offices in Delaware to be deposed or to answer any discovery

14   demand that go beyond the answer of personal jurisdiction

15   beyond the issue.

16               THE COURT:  Is that it?

17               MR. WARSHAVSKY:  That's really it in a nutshell,

18   Your Honor.

19               THE COURT:  All right.  That's fine.  I enjoy

20   brevity.  No problem with that.

21               A response, please.

22               MR. WARSHAVSKY:  I can cite cases, if you want.

23               THE COURT:  No, thank you.

24               MR. BOSCH:  Your Honor, this is Bill Bosch from

25   Morgan Lewis on behalf of Amazon.com.

1              THE COURT:  Yes.

2              MR. BOSCH:  Your Honor, the procedural profile

3    of the case now is that there is a motion to dismiss

4    pending and plaintiffs filed or served some discovery,

5    some specifically targeted discovery focused on the

6    jurisdictional issues raised in the motion to dismiss as

7    well as in the affidavits that were filed in support of

8    that motion.  And defendants' response to that narrowly

9    tailored discovery was you are not entitled to any

10   discovery.

11             THE COURT:  Well, that is not what he just

12   said.  I understand what he said in his papers but that is

13   not what he just said so I want to know, counsel, whether

14   you gentlemen can agree on some specific and narrowly

15   tailored discovery to accomplish the purpose that needs to

16   be accomplished here.  The goal, I should say.

17             MR. WARSHAVSKY:  Oren Warshavsky speaking.

18             THE COURT:  Yes.

19             MR. WARSHAVSKY:  I don't think there is any way

20   we would agree to having the defendants come from Greece to

21   be deposed in Delaware.

22             MR. COBRIN:  Your Honor, this is Peter Cobrin,

23   also with Oren Warshavsky.  One of the defendants has never

24   been in America.  The other defendant, when he was here --

25             THE COURT:  I'm not going to decide the motion

1    right now, counsel.  What I am interested in is determining

2    whether counsel can come to an accord on how to get to the

3    place and the position of Amazon.com, the information it

4    needs to properly meet your motion, if it can.

5              MR. BOSCH:  Your Honor, there is some written

6    discovery which does not require anybody to travel anywhere.

7              THE COURT:  Okay.

8              MR. BOSCH:  There are two notices of deposition.

9    One is a notice of Greg Lloyd Smith, who is a U.S. citizen

10   who resides in Greece.  And he is the controlling

11   shareholder and corporate officer in charge of Citi USA, a

12   Milford, Delaware company.  There is also a 30(b)(6)

13   deposition notice for a corporate representative of that

14   Delaware company for which an affidavit was entered by I

15   believe Greg Lloyd Smith.

16             Now, if the issue is bringing a U.S. citizen

17   who is a corporate officer and controlling shareholder of a

18   Delaware corporation to Delaware, I suppose probably the

19   most convenient thing would be for that one gentleman to fly

20   to Delaware rather than to have all counsel fly to Greece.

21             THE COURT:  Could I hear a response?

22             MR. WARSHAVSKY:  Yes.  Your Honor, it's Oren

23   Warshavsky again.  The Delaware company which was referred

24   to has not moved to dismiss on the basis of personal

25   jurisdiction.  There should be no reason to take discovery

1    from them on the basis of personal jurisdiction.  Simple

2    ownership of a company is not a reason to bring a person in.

3    He is only one owner and it's not, it never has been a basis

4    to bring somebody into the jurisdiction.

5            MR. BOSCH:  Your Honor, this is Bill Bosch.  The

6    company we're talk about is Citi Services, Inc.  Citi

7    Services, Inc. is presently subject to a motion to dismiss

8    for lack of subject matter jurisdiction.  The defendants

9    claim that Citi Services, Inc. is not involved in the

10   operation of the online book site which Amazon.com intends

11   is violative of the Lanham Act and is a copyright violation,

12   et cetera.

13           As I submitted to the Court, a prospectus has

14   been posted on the web which identifies Citi Services, Inc.,

15   this Delaware company, as being wholly controlled by the

16   two individual defendants.  And that is, again, Greg Lloyd

17   Smith, a U.S. citizen, and his wife.  And it is this

18   Delaware corporation whose principal business activities

19   include book publishing and distribution and, specifically,

20   referencing the website that is at issue in this case.  So

21   there is the need for discovery against Citi Services, Inc.

22   Affidavits have been entered on by Mr. Smith contending that

23   Citi Services Inc. is not involved in the operation of the

24   infringing website.  And we are entitled to discovery to

25   address that issue; and that discovery is most appropriately

1   directed to the person who entered or submitted the

2   affidavit on behalf of Citi Services, Inc.  That is Greg

3   Lloyd Smith; not surprisingly, the same gentleman who runs

4   the company.

5           THE COURT:  You see, counsel, the Court is of

6   the view that Amazon has at least put forth some indication

7   that the defendants in this case are amenable to suit; and I

8   think they're entitled to conduct some discovery, as I said

9   earlier, in an effort to meet the motion that has been filed

10   by the defendants.  So I guess the Court is asking whether

11   counsel can come to an accord or whether the Court going to

12   have to enter some arbitrary order that may not serve the

13   best interest of either party.

14           MR. WARSHAVSKY:  Your Honor, Oren Warshavsky

15   again.  I think at least the written requests were tailored

16   at the very least to be in terms of -- to be free framed in

17   terms of contacts with Delaware.  I think a lot of them go

18   beyond contacts with Delaware.

19           THE COURT:  Well, they shouldn't.

20   Mr. Warshavsky, they should not.  And I agree with you, to

21   the extent that they do and do not address the issue that's

22   before the Court presently, they should not, and they should

23   be further tailored.  But it would seem to me, counsel, you

24   could agree and your opponent could agree on that.  That's

25   not that difficult.

1              MR. COBRIN:  Your Honor, this is Peter Cobrin

2    again for the defendants.  If they were tailored paper

3    discovery requests, I agree with you.  I mean we don't think

4    that they made even a threshold showing of jurisdiction.

5    This is a website that is authorized in Greece.  It's

6    allowed to be used in Greece.  And we don't think there is

7    any basis for jurisdiction.  But I understand what you are

8    saying, but certainly that discovery requests go way beyond,

9    are much broader than jurisdiction.

10             MR. WARSHAVSKY:  Your Honor, if I may just add

11   one point, which I realize -- it's Oren Warshavsky again --

12   which I realize we never really submitted an opposition,

13   which is that the exact same lawsuit was brought by Amazon

14   against the same -- by plaintiff in this lawsuit against the

15   exact same defendants in Greece three weeks before this

16   lawsuit was brought in Delaware.  And it was only after the

17   injunction was denied and it was put off that this lawsuit

18   was then brought in Delaware, so as soon as they realized

19   these people are in Delaware.  We just don't want to have

20   them flying into Delaware.

21             MR. BOSCH:  Your Honor, this is Bill Bosch

22   again.  I wanted to skip back to the issue here, which is

23   the specific discovery to which we would be entitled.  And,

24   again, we're arguing this in the absence or in a vacuum,

25   since we're not looking at the discovery that was actually

1    served by reference to that discovery, which we have

2    submitted to the Court.  And these were attachments to the

3    letter that Mr. Lazarus sent to you.

4              THE COURT:  I have it in front of me.

5              MR. BOSCH:  I think you will see that all of the

6    discovery is specifically tailored to the jurisdictional

7    issues raised in the motion to dismiss and the affidavits.

8              And with respect to whether there are any

9    contacts in Delaware in particular, although I'd be happy to

10   give this to the Court, I don't have it in front of me, a

11   recent amendment to the Federal Rules of Civil Procedure

12   permits discovery against or permits jurisdiction against

13   foreign entities that are not amenable to suit in any

14   individual jurisdiction based on a minimum contact, based

15   on an amalgamation of their contacts in the United States,

16   where the Court makes a decision based on the amalgamation

17   of contacts what is the most appropriate forum in the United

18   States to permit an action.  And we would submit, Your

19   Honor, that would likely be Delaware given that Citi

20   Services is a Delaware company.

21             THE COURT:  That may be, counsel.  And I may end

22   up agreeing with you, I may not.  But how does that advance

23   the ball with regard to this discovery dispute?

24             MR. BOSCH:  The discovery to be tailored

25   specifically to contacts in Delaware I think is too narrow.

1   The objective should be to establish their contacts in the

2   United States.  They're claiming they are not subject to the

3   personal jurisdiction of this Court; and the question is are

4   they subject to the jurisdiction of any courts for the

5   purposes of enforcing the Lanham Act and the Copyright Act

6   and the civil RICO.

7             THE COURT:  Are there other districts in the

8   United States, our jurisdictions in the United States where

9   they may have had more substantial contacts than they've had

10  here in Delaware?

11            MR. WARSHAVSKY:  All we know is --

12            THE COURT:  Just a second.  I'll give you a

13  chance, counsel.

14            Go ahead and respond to the question, please.

15  That was Mr. who that I was originally looking to?

16            MR. BOSCH:  Mr. Bosch.

17            THE COURT:  Yes.

18            MR. BOSCH:  Okay.  On behalf of plaintiffs, Your

19  Honor, the motion to dismiss and the affidavits submitted in

20  connection was that motion alleged that or stated that the

21  defendants have had contacts and have sold books into other

22  states.  They don't say what the extent of those dealings

23  are, and that's what the discovery is targeted at.  We need

24  to find out where they are selling books into the united

25  states.  We know that they're engaged in business in

1    Delaware.  They now claim -- and I believe wrongly -- in

2    their affidavits that they do not do any business.  And the

3    letter we've submitted to the Court shows an e-mail by Greg

4    Lloyd Smith with a customer in Delaware confirming an order.

5    So whether it's in Delaware, we think Delaware is the most

6    appropriate jurisdiction, but we don't believe that the

7    discovery at this stage should be limited to only those

8    business dealings in Delaware.

9              THE COURT:  Okay.  Is there a way to fashion the

10   discovery in a way that is -- let's presume for a moment

11   that I agree with you -- that is not unduly burdensome?

12             MR. COBRIN:  Your Honor, this is Peter Cobrin.

13   If I may?

14             THE COURT:  Just a second.  I'd like to hear

15   from Mr. Bosch on that.

16             MR. BOSCH:  Your Honor, my sense is that the

17   written discovery should not be burdensome at all.  It is

18   narrowly tailored.  The only real issue I sense right now

19   is having Mr. Smith travel from Greece to Delaware.  My

20   suggestion then might be an accommodation where Mr. Smith is

21   subject to the Rules of Civil Procedure in Delaware -- I'm

22   sorry -- in Greece and then we have a court reporter present

23   in Greece at defendants' expense, and that we can conduct a

24   deposition by telephone.

25             THE COURT:  Okay.  Now, who was that that has

1    been anxious to speak?  I'm sorry, I keep cutting you off.

2              MR. COBRIN:  Your Honor, it's okay.  Peter

3    Cobrin for the defendants.

4              THE COURT:  Okay, Mr. Cobrin.

5              MR. COBRIN:  Your Honor, the Third Circuit in a

6    case we've cited, *Max Daetwyler Corp.* vs. *R. Meyer* -- in

7    fact, it's 762 F.2d 290 -- soundly rejected the very theory

8    that my learned colleague on the other side has set forth;

9    namely that you can aggregate the contacts of an alien for

10   purposes of finding jurisdiction in one locale.  In other

11   words, you can't say he has been in this state, he has

12   been in this state and add them all up and say you can get

13   jurisdiction in one particular state.  There has to be

14   sufficient contacts in that particular state.  And this

15   was a case that was decided by the Third Circuit and cert.

16   was denied by the Supreme Court.  This was decided on

17   Constitutional grounds of due process.  So I'm not aware of

18   any amendment to the Federal Rules.  You need an amendment

19   to the Constitution.

20             THE COURT:  I wasn't either, counsel.  I was

21   fascinated to hear the argument, though.

22             MR. COBRIN:  Your Honor, we cited the case.  And

23   the reason I'm so familiar with it is that it was my case.

24   It was a 2-to-1 decision by the Third Circuit.

25             The second question really is that the

1    discovery they seek goes way beyond jurisdiction.  They

2    want to know organizational charts, personnel lists,

3    telephone directories, shareholders.  This is really a

4    fishing expedition.  And the problem really arises, Your

5    Honor, because they started the suit with no jurisdictional

6    basis and they're now trying to bootstrap themselves up and

7    get jurisdiction.  And the discovery they seek is just

8    incredibly broad.  Now you are talking about individuals who

9    haven't been in the United States.  One has never been in

10    the United States and the other one hasn't been, I think he

11    said, in 20 years.  His only -- 13 years -- connection with

12    Delaware, with all due respect to Delaware, was that he got

13    gas when driving on the Eastern Seaboard somewhere.

14            In any event, there is no -- you can't -- the

15    thing about cherry-picking contacts is just not the law in

16    the Third Circuit.  We've cited the *Daetwyler* case for that.

17    And the discovery requests are unduly burdensome.  And to

18    suggest we should bring a man in who hasn't been to the

19    United States in 13 years and the very corporation they're

20    talking about and saying it's relevant to?  We are not

21    denying there is in personam jurisdiction over that

22    corporation.

23            THE COURT:  Let me ask you this:  If the written

24    discovery requests were further narrowed in accordance with

25    the law of the Third Circuit, let me say it that way, and it

1     could be arranged for a telephone deposition with the

2     expense to be shared by the parties, how would that set with

3     you gentlemen?

4               MR. COBRIN:  May I address that, Your Honor?

5     This is Peter Cobrin.

6               THE COURT:  Yes.

7               MR. COBRIN:  I don't think they are entitled to

8     a deposition.  And as far as the expense goes, we're talking

9     about somebody who has registered his trademark in Greece.

10    They have already sued him in Greece.  And it's just, you're

11    talking about a Colossus vs. a guy who has a small business

12    in Greece.

13              THE COURT:  All right.

14              MR. COBRIN:  This is not appropriate.

15              THE COURT:  All right.  Mr. Bosch.

16              MR. BOSCH:  Again, this is Bill Bosch again.

17    Your Honor, the Greek case, just to set the record straight

18    on that, is a different cause of action with different

19    remedies.  So, for example, we cannot enforce the RICO

20    statutes.  We do not have a Lanham Act claim.  We do not

21    have a copyright infringement case in Greece.  So these are

22    different claims.  And there is just no argument there we

23    should be denied discovery whereas I think the Court

24    recognized we have, under the law of the Third Circuit,

25    identified a good faith or a reasonable basis for

1    jurisdiction here.

2              Now, the question is what is the scope of that

3    discovery?  As I understand defendants' counsel, they now

4    want to deny us an opportunity to depose the very same

5    people who have submitted affidavits in support of their

6    motion to dismiss.  And that is wholly restrictive, and it

7    would deny us a fair and adequate opportunity to address

8    the allegations in the motion to dismiss; which, Your Honor,

9    I would remind the Court we already understand to be

10   materially false in at least one respect; and that is the

11   affidavit states that the website, the infringing website,

12   Amazon.gr, does not, has not conducted any business in

13   Delaware when we submitted an e-mail that shows Mr. Smith,

14   himself, on behalf of Amazon.gr, shipped books to Delaware.

15             MR. COBRIN:  Your Honor, this is Peter Cobrin.

16   If I may address that?

17             The problem my learned colleague is having, he

18   has a suit with no basis for jurisdiction.  They have made

19   no threshold showing there is jurisdiction and now they want

20   to bootstrap themselves up to get jurisdiction.  And that's

21   the problem you have when you start a lawsuit without a

22   basis, and that is what is going on here.

23             MR. BOSCH:  Your Honor, we will address that in

24   our opposition to the motion to dismiss.  We are addressing

25   today, as I understand it, whether we will be entitled to

1    discovery so we have a fair and reasonable opportunity to

2    meet the motion and the affidavit submitted therewith.

3              Your Honor, also I would like to direct the

4    Court's attention to, it's Rule 4(k)(2) of the Federal Rules

5    of Civil Procedure.

6              MR. COBRIN:  What rule is that?

7              MR. BOSCH:  The territorial limits of effective

8    service.  And again, it's if the exercise of jurisdiction is

9    consistent with the Constitution and the laws of the U.S.,

10   we can serve a summons to establish personal jurisdiction

11   over the person of any defendant who is not subject to the

12   jurisdiction of the Court's general jurisdiction of any

13   state.  And the courts have interpreted that to provide

14   for aggregated national contacts there for establishing

15   jurisdiction.  And we will address that, Your Honor, in our

16   opposition to the motion to dismiss.

17             THE COURT:  What was the rule citation, counsel?

18             MR. COBRIN:  That's the rule for service, that's

19   not jurisdiction.  And, Your Honor, again I want to -- this

20   is Peter Cobrin.  I want to reiterate the Third Circuit has

21   specifically rejected the national contacts theory in the

22   *Max Daetwyler* case.  It was a 2-to-1 decision and they

23   rejected it, and cert was denied.  And to suggest that, to

24   ignore this case --

25             THE COURT:  I am not predisposed to ignoring the

```
 1    Third Circuit, counsel.
 2              MR. COBRIN:  I'm not suggesting you are, Your
 3    Honor.
 4              THE COURT:  No, I know that.
 5              MR. BOSCH:  Your Honor, this is Robert
 6    Katzenstein for the defendants.  It was my unfamiliarity
 7    with Your Honor's procedure concerning discovery issues that
 8    led to an improper response to Mr. Lazarus initial letter
 9    concerning the discovery dispute.  I would respectfully
10    request that since there is very important Constitutional
11    type case law on point that the defendants be granted leave
12    to respond with a two-page argument -- the argument we were
13    going to, or that we should have submitted in the first
14    place on this issue.  That's my request.
15              THE COURT:  That's granted.
16              MR. BOSCH:  Your Honor, this is Bill Bosch.  I
17    just want to correct one legal contention.  The Court is
18    operating under a misapprehension of law.  The *Max Daetwyler*
19    case is a Third Circuit which rejected but it did that
20    before the adoption of Rule 4(k)(2).  And if you look at the
21    advisory committee notes to that rule, that was a remedy to
22    address these pre-1993 cases involving jurisdictional
23    deficiencies.  So I don't believe that *Max Daetwyler* in any
24    way is going to limit our ability to obtain discovery that
25    goes broader than Delaware.  And that's all that that issue
```

1    addresses.  Clearly, we should be entitled to discovery that

2    challenges the representations made in the affidavit so that

3    we can fairly and adequately address the motion to dismiss.

4    As I understand it now, however, they are also seeking to

5    limit our discovery so we are only able to address contacts

6    with Delaware based on an incorrect application of the

7    aggregate contacts theory which would establish that if, in

8    fact, they don't have sufficient contacts in Delaware for

9    this Court under the pre-1993 rules, it is still sufficient

10    if, under the aggregate national contacts theory, Delaware

11    is the most appropriate place to obtain jurisdiction over a

12    foreign defendant.

13           That does not address, however, the immediate

14    issue, which is should we be entitled to take a deposition

15    of Greg Lloyd Smith.  The answer, what I'm hearing from

16    defendants is we should so long as there is a proper

17    accomodation.  And I think we have submitted a reasonable

18    accommodation here, Your Honor, which would be a telephone

19    deposition.  And I understand the Court wants us to share

20    the costs, and I think that is where we should go.

21           MR. COBRIN:  This is Peter Cobrin.  If I may

22    address that.  I would invite Your Honor, if I may, to

23    read *Max Daetwyler*.  And *Max Daetwyler* specifically held

24    you cannot aggregate contacts and was talking about

25    Constitutional limits, if I recall.  And the rule that he

1    cites deals with service, it doesn't deal with jurisdiction.

2    Jurisdiction is constitutional.  And just the national

3    contacts theory is dead in the Third Circuit.  In fact, when

4    it arose, that case was split in Philadelphia, two different

5    District Court Judges, and the Third Circuit resolved it

6    2-to-1.  And they simply cannot aggregate contacts

7    throughout the country, not just in the Third Circuit.

8              THE COURT:  Who was it that I just responded to?

9    Who made the request to be permitted to file a paper in

10   this?

11             MR. KATZENSTEIN:  It was Robert Katzenstein,

12   Your Honor, on behalf of the defendants.

13             THE COURT:  Yes, on behalf of the defendants.

14   And I think I granted that request.  And I think that would

15   be appropriate for you to do, Mr. Katzenstein.

16             MR. KATZENSTEIN:  Thank you, Your Honor.

17             THE COURT:  Let's do that.  And I think what

18   we'll do is reschedule, promptly, should I feel the need --

19   well, I think I will feel the need for another

20   teleconference.

21             MR. COBRIN:  Your Honor, this is Peter Cobrin.

22   Is it okay if we get the letter to you by Tuesday?

23             THE COURT:  That's fine.

24             MR. BOSCH:  Your Honor, this is Bill Bosch.

25   Will we have a right to reply to that?

1                    THE COURT:  Yes.

2                    MR. BOSCH:  Thank you, Your Honor.

3                    THE COURT:  When do you think you can reply,

4      Mr. Bosch, if you get it on Tuesday as well?

5                    MR. BOSCH:  I'm going to say Friday.

6                    THE COURT:  That's fine.

7                    MR. COBRIN:  This is Peter Cobrin.  Is their

8      letter limited to two pages?

9                    THE COURT:  Everybody is limited similarly.

10                   MR. COBRIN:  Okay.

11                   THE COURT:  We will research the authorities

12     that you cite within your writings, and reconvene another

13     initial scheduling conference on what day, Ms. Preston,

14     while we have counsel on the phone with their calendar?

15                   She is going to get our calendar.  Bear with me

16     a second.

17                   (Pause.)

18                   THE COURT:  We'll try to schedule it a week from

19     next Friday, when the reply is due.

20                   MR. BOSCH:  That's fine with plaintiffs, Your

21     Honor.  Friday the 12th.

22                   THE COURT:  Yes.  Is that all right with us,

23     Ms. Preston?

24                   MR. COBRIN:  This is Peter Cobrin.  This is

25     great with us.

1          THE COURT:  I'm sorry, gentlemen.  I will not be

2     here on Friday the 12th.

3          MR. BOSCH:  Your Honor, this is Bill Bosch.  I

4     think I misspoke.  That would be Friday the 19th, the week

5     after.

6          THE COURT:  Okay.  So Friday the 19th.  So let's

7     look at a week after Friday the 19th.

8          THE DEPUTY CLERK:  You can probably do it on

9     Friday the 19th.

10          MR. COBRIN:  So, Your Honor, is the 19th

11     convenient?  Mr. Bosch misspoke.  Our paper would be due on

12     the 12th and the parties would be available, if it suits

13     Your Honor, on the 19th.

14          THE COURT:  Okay.  That's fine.  10:00 o'clock.

15     How is 10:00 o'clock, gentlemen?

16          MR. BOSCH:  That's fine.  Just so it's clear,

17     Your Honor, this is Bill Bosch.  The brief is specifically

18     addressing the aggregate contacts theory by which we would

19     seeks jurisdictional discovery broader than that targeting

20     Delaware.

21          THE COURT:  That seems to be the primary bone of

22     contention.

23          MR. BOSCH:  All right.  Thank you, Your Honor.

24          MR. COBRIN:  Thank you very much.  This is Peter

25     Cobrin on behalf of the defendants.

1          THE COURT:  All right.  We'll look for your

2    papers, gentlemen.  And we'll speak on the 19th.

3          MR. KATZENSTEIN:  Your Honor, will plaintiff

4    take care of the call?

5          THE COURT:  I would appreciate that.

6          MR. LAZARUS:  We'll do that.  Thank you, Your

7    Honor.

8          THE COURT:  Thank you.  Good-bye, gentlemen.

9          (The attorneys respond, "Thank you, Your

10    Honor.")

11          (Telephone conference ends at 3:31 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25